David W. CAREY, Plaintiff-Appellant,

v.

UNITED STATES POSTAL SERVICE, Defendant-Appellee.

No. 85–2894.

United States Court of Appeals, Tenth Circuit.

Feb. 23, 1987.

Bryan E. Nelson (Ronald W. Nelson, Alder & Nelson, with him on the brief), Alder & Nelson, Overland Park, Kan., for plaintiff-appellant.

John C. Hoyle (Richard K. Willard, Asst. Atty. Gen., Benjamin L. Burgess, Jr., U.S. Atty., and Robert S. Greenspan, U.S. Dept. of Justice, with him on the brief), U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before HOLLOWAY, Chief Judge, and McWILLIAMS and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

Plaintiff-appellant appeals the dismissal of his claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16, based upon racial discrimination in employment. The district court granted defendant-appellee's motion for summary judgment, concluding that the appellee had articulated a legitimate, nondiscriminatory reason for its conduct, and appellant did not raise a sufficient factual issue as to whether that reason was a mere pretext for impermissible discrimination. We affirm.

For some time prior to 1978, appellant, a white male, and Mr. Omar Nix, a black male, both worked at appellee's Kansas City Bulk Mail Center. In 1979, one of the two individuals in the Bulk Mail Center holding a position designated as "General Supervisor, Mails," a grade 17 salary level position, retired. The vacant position was not filled, but junior employees were used on a "push-up" basis to temporarily fill the grade 17 position when needed. The junior employee would receive the grade 17 level of pay for the time he filled the supervisory position.

On June 27, 1980, a "Quality Control Supervisor" position, at grade 19 salary level, became available. Nix, who was then a grade 15 "Quality Control Analyst," applied for the grade 19 position. Although Nix was rated as one of the five best qualified applicants, he was not selected, and the position was given to a white applicant. Nix then filed a charge of racial discrimination with the Equal Employment Opportunity Commission (EEOC). Informal conciliation efforts failed to resolve the matter, and a formal EEO hearing was held on March 8, 1983.

Meanwhile, in December 1982, the remaining General Supervisor, Mails, position was vacated by retirement. A vacancy announcement was posted for this position. Fifteen people, including appellant and Nix, applied for the position. A Promotion Review Committee chose to interview eight of the applicants. Appellant was among the group of interviewees, while Nix was not. In a letter dated March 9, 1983, the Committee recommended appellant and one other individual as the most qualified for the position. Rec. vol. I, doc. no. 16, Ex. A. The position was ultimately awarded to the

other applicant, and the placement was announced April 16, 1983.

Prior to the April 16, 1983, announcement, Nix had stated to a fellow employee that he was going to be awarded the grade 17, General Supervisor, Mails, position. After the formal EEO hearing, but before a decision was rendered, the Postal Service and Nix entered into an agreement settling Nix' claim. The individual in charge of negotiating the settlement for the Postal Service was the same individual in charge of filling the General Supervisor, Mails, position vacated in 1982. As part of the settlement, Nix was promoted to the General Supervisor, Mails, position that had been vacated in 1979. Nix' promotion was publically announced on May 11, 1983. Since Nix' promotion, appellant has been able to spend far less "push-up" time in the supervisory position, resulting in a somewhat smaller salary. At no time was a vacancy publically announced for the position ultimately given to Nix.

Appellant filed a complaint with the EEOC, alleging racial discrimination in failing to give him the position that was given to Nix. His complaint was administratively rejected. He then filed this Title VII action in the district court, alleging reverse discrimination in the promotion of Nix to the grade 17 position after the Promotion Review Committee had implicitly determined that appellant was a better qualified candidate for the job. The Postal Service filed a motion for summary judgment, arguing that appellant failed to allege facts sufficient to support a finding of intentional discrimination based on race. The district court granted the summary judgment, concluding that the Postal Service had articulated a legitimate, nondiscriminatory reason for giving the job to Nix rather than appellant, and that appellant had failed to demonstrate that the reason articulated by the Postal Service was a mere pretext for impermissible discrimination. Appellant filed a timely notice of appeal from the summary judgment order with this court. 28 U.S.C. § 2107.

Fed.R.Civ.P. 56(c) provides that summary judgment shall be rendered when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." The Supreme Court has recently interpreted the standard for granting summary judgment. *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In discussing the materiality of the disputed facts, the Court stated "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.,* 106 S.Ct. at 2510. A genuine issue of fact exists only where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Summary judgment concerns the sufficiency of the evidence to present an issue for trial, not the weight of such evidence. *Id.* at 2511. Thus, the relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 2512. Finally, the moving party is entitled to judgment as a matter of law where the non-moving party has "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Because summary judgment decisions involve purely legal determinations, we review them *de novo. Morgan v. Mobil Oil Corp.,* 726 F.2d 1474, 1477 (10th Cir.1984).

Title VII protects all individuals, including whites, from employment discrimination on the basis of race, and appellant's suit therefore is cognizable under Title VII. *McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 280, 96 S.Ct. 2574, 2578–79, 49 L.Ed.2d 493 (1976). The Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. However, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plain-

tiff." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Thus, the plaintiff must show that the "employer is treating 'some people less favorably than others because of their race....'" *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978) (quoting *Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854–55 n. 15, 52 L.Ed.2d 396 (1977)).

Under *McDonnell Douglas,* the plaintiff must first establish a prima facie case of racial discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. The establishment of the prima facie case creates a presumption that the employer unlawfully discriminated against the employee. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. In the present case, the district court expressly held that appellant had established a prima facie case of racial discrimination. Because this determination of the district court has not been appealed by either party, the propriety of that determination is not now before us. We therefore proceed from the assumption that a prima facie case of racial discrimination has been established.

Once a plaintiff establishes his prima facie case, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. The defendant may rebut the presumption of discrimination by explaining, through the introduction of admissible evidence, that the plaintiff was rejected, or someone else preferred, for legitimate, nondiscriminatory reasons. *Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094–95. The explanation provided must be legally sufficient to justify judgment for the defendant. *Id.* at 255, 101 S.Ct. at 1094–95. In the present case, the Postal Service has introduced evidence which tends to demonstrate that the awarding of the disputed position to Nix was simply the result of a good faith settlement of Nix' Title VII claim. Appellant, however, contends that the settlement itself resulted in discriminatory treatment, and thus cannot

suffice as a legitimate, nondiscriminatory reason for preferring Nix.

■ Title VII contains a strong preference for voluntary settlement of employment discrimination claims. *Carson v. American Brands, Inc.,* 450 U.S. 79, 88 n. 14, 101 S.Ct. 993, 998–99 n. 14, 67 L.Ed.2d 59 (1981). Appellant asserts that such settlements may not abridge the rights of other employees. However, "relief under Title VII cannot be denied simply because the interests of some employees will be negatively affected; otherwise, 'there will be little hope of correcting the wrongs to which the Act is directed.'" *EEOC v. International Longshoremen's Ass'n,* 623 F.2d 1054, 1060 (5th Cir.1980), *cert. denied,* 451 U.S. 917, 101 S.Ct. 1997, 68 L.Ed.2d 310 (1981) (quoting *Franks v. Bowman Transportation Co., Inc.,* 424 U.S. 747, 775, 96 S.Ct. 1251, 1269, 47 L.Ed.2d 444 (1976)). The Court in *Franks* noted that conflicting interests always will be present in cases such as this, but that such interests should not be allowed to frustrate the central "make whole" objective of Title VII. *Franks,* 424 U.S. at 774, 96 S.Ct. at 1269. Finally, the Court quoted *Vogler v. McCarty, Inc.,* 451 F.2d 1236, 1238–39 (5th Cir. 1971), for the proposition that the courts "must be free to deal equitably with conflicting interests of ... employees in order to shape remedies that will most effectively protect and redress the rights of the ... victims of discrimination." *Franks,* 424 U.S. at 775 n. 35, 96 S.Ct. at 1269 n. 35.

■ We agree with the Sixth Circuit's application of these principles to conciliation agreements in *EEOC v. McCall Printing Corp.,* 633 F.2d 1232, 1237–38 (6th Cir. 1980). Conciliation agreements which settle Title VII claims

> may not be considered independent acts of discrimination [against those not benefited by the agreement], as a matter of law, unless there are allegations of bad faith in making the agreement, that is, allegations that the agreement was not a bona fide attempt to conciliate a claim but rather an attempt to bestow unequal employment benefits under the guise of remedying discrimination.

Our review of the record reveals no evidence which would tend to support an allegation of bad faith in the settlement of the Nix claim. To allow a settlement such as this to be considered an independent act of discrimination would "spark new rounds of litigation, settlement of claims would be discouraged," *McCall Printing Corp.*, 633 F.2d at 1238, and an employer would face suit by one group of employees if it fails to correct past discrimination, while facing suit by another group of employees if it does correct the past discrimination. *Dennison v. City of Los Angeles Dept. of Water and Power*, 658 F.2d 694, 696 (9th Cir.1981).

Appellant attempts to distinguish cases such as *McCall Printing Corp.* by arguing that those cases involved the balancing of one group's rights against those of another group, while in this case, appellant alone bears the burden of the Nix settlement. This distinction is unfounded. We note initially that the case law does not distinguish between the rights of a group of innocent employees and those of a single innocent employee. Moreover, any burden precipitated through the settlement of Nix' claim is not borne solely by appellant. The award of the disputed position to Nix precludes all qualified employees from being temporarily pushed up into the grade 17 position. Likewise, the filling of the position affects all those who might have applied for the position had the vacancy been advertised. The fact that appellant finished second in the competition for the other General Supervisor, Mails, position in no way indicates that he would have been awarded the disputed position, and gives him absolutely no rights to that position. To the extent the Nix settlement did negatively affect the rights and expectations of others, such effect is borne by all potential applicants or push-up employees.

Finally, appellant's contention that this case is similar to *Regents of the University of California v. Bakke*, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978), is misplaced. The *Bakke* case dealt with an affirmative action program that set aside a specific number of positions for members of a given race. Thus, applicants who were not members of that race were precluded from competing for those positions solely on the basis of race. In the present case, however, appellant was not precluded from the disputed position because he was not a member of the specified race. All potential applicants or employees who might be used on a push-up basis were affected, regardless of their race. Furthermore, Nix was not given a position that had been reserved for a black individual, but was awarded the job in settlement of allegations of past discrimination. The settlement of the claim and the resultant impact were inherently race neutral.

█ We believe that the settlement of Nix' Title VII complaint in this case was a legitimate, nondiscriminatory reason for awarding Nix the disputed position. The Postal Service's explanation meets appellant's prima facie case by presenting a nondiscriminatory reason for its actions, and also "[f]rames the factual issue with sufficient clarity so that the [appellant] will have full and fair opportunity to demonstrate pretext." *Burdine*, 450 U.S. at 255–56, 101 S.Ct. at 1095. We therefore conclude that this explanation suffices to discharge the Postal Service's burden at this stage of the inquiry.[1]

Pursuant to *McDonnell Douglas*, after the defendant presents a legitimate, nondiscriminatory reason for his actions, the plaintiff has the opportunity to demonstrate that the reason offered by the defendant was in fact only a pretext for impermissible discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. Appellant thus has the burden of showing that the proffered reason was not the true reason for the employment decision, and this burden "now merges with the ultimate burden of persuading the court that [appellant] has been the victim of intentional

---

1. We do not have before us the question of whether appellant might have some other cause of action against the Postal Service for its failure to follow its normal hiring procedures in filling the disputed position. We simply hold that, under these circumstances, the settlement of the prior Title VII complaint does not constitute an independent act of intentional racial discrimination against appellant.

discrimination." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. Appellant may meet this burden directly by demonstrating that a discriminatory reason actually motivated the Postal Service, or indirectly by showing that the Postal Service's explanation is unworthy of credence. *Id.*

Our review of the record confirms the district court's conclusion that appellant has offered no evidence which would indicate that the settlement was a mere pretext for intentional discrimination. Appellant offers no direct evidence that the Postal Service's motivation in awarding the position to Nix was to discriminate against appellant or members of any particular race. Furthermore, our earlier discussion regarding the legitimate, nondiscriminatory nature of the settlement, coupled with the absence of evidence that would show the conciliation agreement was not a good faith attempt to settle Nix' Title VII claim, convinces us that appellant has failed to offer sufficient evidence that the Postal Service's explanation is not worthy of credence. Therefore, no genuine issue of material fact exists as to the pretext issue. Because appellant failed to make a sufficient showing on that essential element for which he had the burden of proof, the district court's grant of summary judgment in favor of the Postal Service was proper. *Celotex,* 106 S.Ct. at 2553.

AFFIRMED.