ORDER DENYING THE PLAINTIFF’S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DE­FENDANTS’ MOTION FOR SUM­MARY JUDGMENT

BRIMMER, District Judge.
The above-entitled matter having come be­fore the Court upon the Plaintiffs Motion for Partial Summary Judgment and the Defen­dants’ Motion for Summary Judgment, and the Court having reviewed the materials on file herein, having heard argument from the parties, and being fully advised in the prem­ises, FINDS and ORDERS as follows:

Background

On January 1, 1992, Timothy Smells, a Bureau of Indian Affairs (“BIA”) law en­forcement officer who worked for the Wind River Agency Police Department, arrested the plaintiff for driving under the influence of alcohol. Shortly before her arrest, the plain­tiff surrendered her Wyoming driver’s li­cense to Officer Smells. The defendants con­tend that after the arrest, Officer Smells read the plaintiff the Wyoming Implied Con­sent advisement and that the plaintiff refused *1538 a chemical test. The plaintiff takes issue with this assertion and claims that she was never informed orally or in writing that she had any rights with respect to her driver’s license. She also contends that she consent­ed to a chemical breath test and that she believed that she was not required to consent to additional testing.
In any event, Officer Smells did not return the driver’s license to the plaintiff. Instead, he submitted it to the jailers on duty, defen­dants Hurtado and Warren. The plaintiffs license was subsequently misplaced and the defendants do not know where her license is now. Later, after paying a fee, the plaintiff received a replacement license from the Wy­oming Department of Transportation.
The plaintiff brings this suit, alleging that BIA officers are not authorized under Tribal Law or under Wyoming Law to seize driver’s licenses issued by the State of Wyoming and that her due process rights were violated because she was not provided with notice or an opportunity to be heard before her driv­er’s license was revoked.

Standard of Review

“By its very terms, [the Rule 56(c) ] stan­dard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986) (empha­sis in original).
The trial court decides which facts are material as a matter of law. “Only dis­putes over facts that might affect the out­come of the suit under the governing law will properly preclude the entry of summary judgment.” Id. at 248, 106 S.Ct. at 2510; see also Carey v. United States Postal Serv., 812 F.2d 621, 623 (10th Cir.1987). Summary judgment may be entered “against a party who fails to make a sufficient showing to establish the existence of an element essen­tial to that party’s case, and on which that party will bear the burden of proof.” Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Carey, 812 F.2d at 623. The relevant inquiry is “whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.” Carey, 812 F.2d at 623. In considering a party’s motion for summary judgment, the court must ex­amine all evidence in the light most favorable to the nonmoving party. Barber v. General Elec. Co., 648 F.2d 1272, 1276 n. 1 (10th Cir.1981).

Discussion

A. Authority to Seize License
It is undisputed that Officer Smells arrest­ed the plaintiff for a violation of Tribal Code § 8-3-7, which prohibits driving while under the influence of intoxicating liquors. The plaintiff asserts that the defendants acted without authority under Tribal Law or Wyo­ming Law to seize her driver’s license. The defendants argue, however, that Officer Smells had authority under Tribal and Wyo­ming Law to withhold the plaintiffs driver’s license in this case.
The interpretation of state traffic regula­tions regarding the suspension and revoca­tion of state driver’s licenses has been an ongoing point of contention in Wyoming. In State ex rel. Motor Vehicle Div. v. Holtz, 674 P.2d 732 (Wyo.1983), the Wyoming Supreme Court construed the language of Wyo.Stat. § 31-5-233 (1977) narrowly. At that time, the statute provided for revocation of driver’s licenses upon conviction “under this section.” The court held that “[ujnless and until changed by the legislature, only prior convic­tions under § 31-5-233, supra, may be con­sidered ... in suspending and revoking driv­ers’ licenses.” Id. at 743.
Seemingly in response to the Holtz deci­sion, the state legislature amended § 31-7-­127 to provide for revocation of licenses “[u]pon conviction under W.S. 31-5-233 or other law prohibiting driving while under the influence ...” Wyo.Stat. § 31—7—127(d)(iii) (1984 Supp.). In addition, the legislature defined the term, “other law prohibiting driv­ing while under the influence” to mean:
a statute of another state, the United States, a territory or district of the United States or an ordinance of a governmental entity of this or another state which pro­ *1539 hibits driving while under the influence of intoxicating liquor....
Wyo.Stat. 31-7-102(a)(xx) (1984 Supp.). In the case of Harris v. Wyoming State Tax Comm’n, 718 P.2d 49, 52 (Wyo.1986), the Wyoming Supreme Court, faced with this newly revised statute, confronted the ques­tion of whether a person’s previous convic­tion for driving while under the influence of intoxicating liquor in the Tribal court, pursu­ant to a tribal ordinance, could be used for the purposes of revoking his license under state law. The court examined the phrase, “conviction under W.S. 31-5-233 or other law prohibiting driving while under the influ­ence,” and determined that it did not include Tribal ordinances. Id. The court stated:
We have no question that the legislature intended to broaden the authority of the driver’s license division to suspend and revoke the licenses of habitual drunk driv-­ers_ The definition in § 31-7-­102(a)(xx) ... does not, however, encom­pass within its listing of other laws a tribal ordinance, and none of the entities listed there are appropriate to describe an Indi­an tribe or its ordinances.

Id.

Since the Harris decision, the legislature has, once again, amended the language defin­ing “other law prohibiting driving while un­der the influence.” Section 31-5-233 (1989 Supp.) defines the phrase to mean “a statute of another state, the United States or a territory or district of the United States or an ordinance of a governmental entity of this or another state or of an Indian tribe which prohibits driving while under the influence of intoxicating liquor....”
It appears, therefore, that a convic­tion for driving under the influence pursuant to Tribal law may support the revocation of a driver’s license. The question which is posed in this case, however, is whether BIA officers have the authority to effectuate such a revo­cation or to seize a person’s driver’s license.
The defendants contend that BIA of­ficers are granted this authority by the Wyo­ming Statutes. The defendants first point to Wyoming Statute § 31-7-116, which requires every licensee to surrender his license to “any peace officer as defined in W.S. 31-5-­102(a)(xxxiii).” Section 31-5-102(a)(xxxiii) defines “police officer” as any “officer autho­rized to direct or regulate traffic or to make arrests for violations of traffic regulations!!]” The plaintiff contends that because that sec­tion does not specifically include BIA agents in the definition of a police officer, BIA agents lack the authority to compel a licensee to surrender her license. The defendants argue, however, that Wyoming law includes BIA officers, not as Wyoming police officers, but as federal “peace officers” for the pur­poses of enforcing Tribal traffic law and the implied consent provisions thereunder. This Court agrees. It is beyond dispute that, as a BIA officer working for the Wind River Agency Police Department, Officer Smells was authorized to make arrests for violations of traffic regulations provided by Tribal Code. Therefore, under the terms of § 31-­5-102(a)(xxxiii), although he is not a Wyo­ming “police officer,” he may be considered a “peace officer” for the purposes of enforcing Tribal traffic law and is accordingly autho­rized under Wyo.Stat. § 31-7-116 to with­hold licenses.
The defendants next rely on Wyo­ming Statute § 31-5-1205(k), which autho­rizes police officers to withhold the license of a person who is arrested for violation of Wyoming Statute § 31-5-233 or a municipal ordinance which substantially conforms to that statute. The defendants seem to be arguing that because § 31-5-233, the Wyo­ming statute prohibiting driving under the influence of alcohol, defines “[o]ther law pro­hibiting driving while under the influence” to include ordinances of Indian tribes which prohibit driving while under the influence of intoxicating liquor, Wyo.Stat. § 31—5— 233(a)(v), and provides that any “person con­victed under this section or a municipal ordi­nance which substantially conforms to the provisions of this section shall, in addition to the penalty imposed, have his driver’s license suspended or revoked pursuant to [Wyo.Stat. §§ 31-7-127 or 31-7-128],” it necessarily im­plies that BIA agents have the authority to enforce it. The defendants further contend that because both of the latter sections man­date revocation or suspensions for convic­tions under § 31-5-233 or “other law prohib­iting driving while under the influence”, see Wyo.Stat. §§ 31—7—127(a)(ii) and 31-7-128(b), *1540 the authority of BIA agents to revoke or suspend licenses is within the scope of the Wyoming Statutes.
In light of the history of the Wyoming Statutes and the clear intent of the Wyoming legislature to include Tribal law as a basis for the suspension of driver’s licenses, it would be disingenuous to suggest that the officers charged with enforcing Tribal laws do not have the authority to act to effectuate license suspensions. Therefore, this Court con­cludes that under the Wyoming Statutes, BIA agents have the authority to compel the surrender or suspension of a person’s Wyo­ming driver’s license.
B. Bivens Claims
The plaintiff next claims that even if the defendants had the authority to seize her license, they violated her Fifth Amendment due process rights by failing to give her notice and an opportunity to be heard before suspending her driver’s license, as required by Wyoming law, Wyo.Stat. § 31—B—102(f), and that she is entitled to relief pursuant to Bivens v. Six Unknown Named Fed. Narcot­ics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[1] The defendants con­tend, however, that the plaintiffs Bivens claim is unwarranted as a matter of law.[2]
1. The Bivens Doctrine
In Bivens, the Supreme Court rec­ognized that a violation of the Constitution by a federal agent could give rise to a cause of action for money damages. Id. at 394-95, 91 S.Ct. at 2003. The basis for a Bivens action is some illegal or inappropriate con­duct on the part of a federal official or agent that violates a clearly established constitu­tional right. In other words, a Bivens action may not be predicated upon a mere lack of courtesy, accuracy, or restraint by govern­ment officials or upon a violation of a statute or regulation which does not supply the basis for a constitutional right. See Cameron v. IRS, 773 F.2d 126 (7th Cir.1985). In addi­tion, a Bivens action may not be brought when (1) Congress has either statutorily pro­hibited the relief sought or provided an alter­native and equally effective remedy as a sub­stitute for direct recovery under the Consti­tution; or (2) in the absence of such affirma­tive action by Congress, there are, nonethe­less, “special factors counselling hesitation.” Schwieker v. Chilicky, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988).
2. Application to this Case
At the most, the record before the Court demonstrates that the plaintiffs driver’s li­cense was lost while in the possession of the Wind River law enforcement agency. She was deprived of its use and possession until she retained a replacement license, at her cost. The plaintiff argues that this consti­tutes a deprivation of her due process rights. This Court is not persuaded.
At the outset, the Court notes that negligent acts of an official causing the unin­tended loss of property do not constitute a deprivation within the meaning of due pro­cess. See Daniels v. Williams, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) (stating “that the Due Process Clause is sim­ply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property.”). In addition, the due process clause is not offended by a government employee’s “random and unau­thorized” acts which deprive a citizen of lib­erty or property interests unless the govern­ment fails to make available adequate post-­deprivation remedies. See Hudson v. Palm­er, 468 U.S. 517, 533, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984). Under such circum­stances, post-deprivation remedies are all the process that is due because the very nature of the deprivation prevents the government *1541 from anticipating it and providing pre-depri-­vation process. Zinermon v. Burch, 494 U.S. 113, 127-28, 110 S.Ct. 975, 984, 108 L.Ed.2d 100 (1990); Logan v. Zimmerman Brush Co., 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982) (stating that “ ‘the necessity of quick action by the State or the impracticality of providing any prede-­privation process’ ” may mean that a postde-­privation remedy is constitutionally ade­quate) (quoting Parratt v. Taylor, 451 U.S. 527, 539, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981)).
In this case, the deprivation can be characterized as random and unauthorized because the deprivation occurred when the BIA agents lost her license and as a result, could not return it to the plaintiff. Although Officer Smells had the authority to seize the plaintiffs driver’s license, he could not legally suspend it because she was not convicted of driving under the influence of alcohol as pro­hibited by Tribal code. However, he did not return her license to her because it was misplaced while in the possession of the Wind River Police department. The mis­placement of her license constitutes a “ran­dom and unauthorized” act for which no pre-­deprivation process could have been contem­plated. Therefore, post-deprivation process would be constitutionally adequate in this case.
The question thus becomes whether the plaintiff has been denied adequate post-de­privation remedies. This Court concludes that she has not. The plaintiffs license privi­leges were not ultimately suspended and she was able to obtain a replacement license. Moreover, the plaintiff had a post-deprivation remedy against the United States under the Federal Tort Claims Act (“FTCA”). 28 U.S.C. § 2671 et seq. (1988). Indeed, the plaintiff filed a claim under the FTCA which was denied at the agency level. Therefore, the plaintiff suffered no denial of her due process rights and, accordingly, cannot main­tain a Bivens claim against the defendants.
THEREFORE, IT IS
ORDERED that defendants’ motion for summary judgment be, and the same hereby is, GRANTED.
IT IS FURTHER
ORDERED that plaintiffs motion for par­tial summary judgment be, and the same hereby is, DENIED.

. In her complaint, the plaintiff alleges that the defendants violated her Fourth Amendment rights, but refers to the defendants’ failure to provide notice, a temporary license, and a hear­ing on the merits of the proposed suspension of her driver’s license. This Court interprets this claim as a claim under the due process clause of Fifth Amendment to the United States Constitu­tion rather than under the Fourth Amendment.

. At oral argument, the plaintiff conceded that defendant Allison is immune from liability under Bivens because he was not personally involved in the withholding of her driver's license. In addi­tion, the Court notes that defendant Oldman was not involved in the arrest or the loss of the plaintiff's license. The claims against defendants Allison and Oldman in their individual capacities are therefore dismissed. Accordingly, this analy­sis applies only to the remaining defendants.