Alfred J. FIGULY, Plaintiff,

v.

The CITY OF DOUGLAS, a municipal corporation, H.R. Johnston, individually, Ray Haskins, individually, and John Does I–X, individually, Defendants.

No. 93–CV–1046–B.

United States District Court,
D. Wyoming.

May 24, 1994.

382

Roger E. Shumate, Murane & Bostwick, Casper, WY, for plaintiff.

Michael K. Davis, Yonkee & Toner, Sheridan, WY, for defendants.

### *ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

BRIMMER, District Judge.

The above-entitled matter having come before the Court upon Defendants' Motion for Summary Judgment and the Plaintiff's Opposition thereto, and the Court having reviewed the materials on file herein, having heard argument from the parties, and being fully advised in the premises, FINDS and ORDERS as follows:

#### *Background*

This is a wrongful discharge case. The plaintiff, Alfred J. Figuly, was the City Administrator of the City of Douglas, Wyoming, until June 14, 1993. Mr. Figuly alleges that he was wrongfully terminated from his position. The details surrounding his termination are as follows.

Effective March 28, 1989, Mr. Figuly was hired as the City Administrator with a salary of $42,500 per year. Figuly was given a three year contract that provided for an annual performance evaluation and severance pay in the amount of three months' salary. In addition, at the time he was employed, Figuly signed a document entitled "Contract" which stated that the terms of the city personnel manual applied to his employment.

Each year, with the exception of 1993, the city council and the mayor evaluated Figuly's performance. This process resulted in the creation of a new contract every year. Over time, the severance pay provision of the contract was increased from three to eighteen months. Figuly contends that this increase

in the severance pay amount was granted in lieu of salary increases.

During his tenure, Figuly carried out the directives of the city council, including raising funds and planning and implementing projects for city improvements. Before the 1990 municipal elections, Figuly dealt with mayor-to-be Ray Haskins regarding a dispute over a zoning violation and with city council member H.R. Johnston regarding the Douglas Community Club. Figuly contends that these dealings were the beginnings of personal vendettas against him.

In April of 1992, the city council and Mayor Haskins completed Figuly's performance evaluation which unanimously gave Figuly "strong overall ratings." Subsequently, the parties entered into contract negotiations which resulted in an agreement to extend the contract term to April of 1994 and included the increase in severance pay to eighteen months. Mayor Haskins then vetoed the contract. That veto was overridden by a council vote of two to one.

Soon after, city council elections took place and a Mr. Trent Kaufman won a seat on the council.[1] Figuly contends that almost immediately, council members Johnston and Kaufman began to take steps to breach his contract. Figuly alleges that Kaufman forced James Hardee, the city attorney who had drafted Figuly's contracts, to resign and then persuaded the council to hire Tom Campbell as the new city attorney. Figuly contends that Johnston called for an executive session to discuss the procedure for voiding his employment contract with the city. On January 25, 1993, the council approved Johnston's motion to declare Figuly's contract void, but agreed that he should continue to serve at the pleasure of the mayor and city council with his present pay and benefits. Figuly states that he was given no notice or opportunity to be heard before this action was taken. Figuly's after-the-fact protest of the action was of no avail.

Subsequently, the council failed to perform Figuly's annual performance evaluation and,

on June 14, 1993, voted to terminate him as City Administrator, effective immediately, and granted him 30 days' severance pay.

Figuly has filed this suit, bringing claims of breach of contract, breach of implied contract, breach of the implied covenant of good faith and fair dealing, the tort of outrage, negligence, defamation, and civil rights violations under 42 U.S.C. § 1983. This Court has subject matter jurisdiction over the § 1983 claim under 28 U.S.C. § 1331 (1988) and over the state law claims under 28 U.S.C. § 1367(a) (West Supp.1993). The defendants have moved for summary judgment. That motion is currently before the Court.

### Standard of Review

"By its very terms, [the Rule 56(c)] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original).

The trial court decides which facts are material as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. at 2510; *see also Carey v. United States Postal Service,* 812 F.2d 621, 623 (10th Cir.1987). Summary judgment may be entered "against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Carey,* 812 F.2d at 623. The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Carey,* 812 F.2d at 623. In considering a party's motion for summary

---

1. It appears that Figuly's severance pay set off a significant amount of negative public opinion and was an issue in the city council elections. In addition, criticism had also been leveled at Figuly for not being responsive to the citizens of Douglas and because the City's reserves had shrunk almost 50% during his administration.

judgment, the court must examine all evidence in the light most favorable to the nonmoving party. *Barber v. General Elec. Co.*, 648 F.2d 1272, 1276 n. 1 (10th Cir.1981).

### Discussion

### A. The Breach of Contract and Breach of Implied Contract Claims

The defendants argue that there was no breach of contract in this case because Figuly's April 18, 1992, contract was voidable and was properly voided by the incoming council on January 25, 1993. The defendants also argue that after that time, Figuly was an at-will employee who could be terminated without cause. Accordingly, the Court must determine whether Figuly's contract was voidable and, if so, whether the city council properly voided it. The Court must also consider whether any other contract existed between Figuly and the city which would provide a basis for his breach of contract claims.

### 1. The Voided Contract

#### a. Wyoming Law and Public Policy

■ One of the most important characteristics of our democratic form of government is the authority of our elected officials to make changes mandated by the electorate. The ability of incoming officials to change policies, procedures, and even key personnel of their predecessors, allows the incoming officials to implement their own policies, those policies desired by the majority of the public who elected them. To allow a prior government or official to bind his successors by creating contracts or other commitments which extend beyond his term would be contrary to this critical facet of democracy. To be certain, it would be neither practical nor desirable for all government contracts to terminate upon the completion of the term of the officials which made them. Nevertheless, the need for newly elected officials to

effectuate change is an important public policy which cannot be ignored by courts interpreting government contracts.

■ The Wyoming Supreme Court has recognized that, as a matter of public policy, the elected successors of a governmental body should be free to exercise their independent judgment in contracting and should not be bound by the contracts of their predecessors. *See Kautza v. City of Cody*, 812 P.2d 143 (Wyo.1991); *Mariano & Assoc. v. Board of County Commissioners of Sublette County*, 737 P.2d 323 (Wyo.1987); *MacDougall v. Board of Land Commissioners of Wyoming*, 48 Wyo. 493, 49 P.2d 663 (1935); *Hyde v. Board of County Commissioners of Converse County*, 47 Wyo. 101, 31 P.2d 75 (1934). In *Mariano*, the court held that, subject to applicable state statutes,

> any contract with a unit of government of the state of Wyoming which extends beyond the term of office of the governmental decisionmakers ... can be subject to challenge if, in consideration of the facts and circumstances, the *necessity and benefit to the governmental unit did not justify the extended term when the agreement was made.*

*Mariano*, 737 P.2d at 329 (emphasis added). In other words, a contract extending beyond the term of the contracting authority may be voidable by the government, or void on the attack of a third party, "if the agreement is not reasonably necessary or of a definable advantage to the governing body." *Id.* at 331–32.[2]

In *Mariano*, the Sublette County Board of Commissioners contracted with the accounting firm of Mariano & Mortenson to perform its annual county audits for the 1984 and 1985 fiscal years. *Id.* at 323. Mortenson subsequently left the firm and then approached the Board on his own to perform the 1985 audit. The Board, which had com-

---

**2.** In *Mariano*, the court rejected the governmental-proprietary distinction which had previously been applied by the Wyoming courts, reasoning that the test resulted in inconsistent and illogical results. *Mariano*, 737 P.2d at 327–28. Under the governmental-proprietary distinction, when a contract serves a governmental purpose, i.e., to benefit the welfare or protection of its citizens, the contract is void, but when a contract serves a

proprietary purpose, i.e., to generate fees, the contract must be enforced. *See Biscar v. University of Wyoming*, 605 P.2d 374, 376 (Wyo.1980). The *Mariano* court has been criticized for its rejection of the governmental-proprietary test. *See* Donald Gerstein, "Contract Law—Local Governments Can Void Long Term Contracts," 23 Land and Water L.Rev. 567, 573–74 (1988).

menced a new term of office, accepted Mortenson's offer and terminated its existing contract with Mariano. Mariano sued, claiming that by accepting Mortenson's bid, the Board breached his contract. *Id.* at 324. The Wyoming Supreme Court, holding that no facts demonstrated why a two-year contractual term was necessary or of benefit to the government, affirmed the lower court's decision granting summary judgment in favor of the Board. *Id.* at 330–31.

In holding that nothing was shown to justify the two year contract in *Mariano,* the court enumerated circumstances under which the extended contract might be reasonably necessary and of definable advantage:

> We could postulate a call for bids whereby a price for two years would be lower, acceptance by qualified accountants would only occur if two years were included, or the experience and acquaintanceship factors of auditing were recognized in the continuity factor involved. Professional services contracts within this sphere of cases is a well-litigated subject.... If some case continuity might be discerned, it comes from consideration by the courts whether the obligated service could be completed annually or would require an extended time to adequately provide the specific task undertaken.

*Id.* at 330–31 (citing *Edsall v. Wheler,* 29 A.D.2d 622, 285 N.Y.S.2d 306 (1967); *Pima County v. Grossetta,* 54 Ariz. 530, 97 P.2d 538 (1939)). Also in dicta, the *Mariano* court stated that its opinion in that case might be to the contrary "if the evidence had shown that the governmental unit had included the two year term in bidding request for some ascertainable reason or justification." *Id.* at 331.

Since the *Mariano* decision, the Wyoming Supreme Court has addressed similar issues several times. In *Keabler v. City of Riverton,* 808 P.2d 205 (Wyo.1991), city employees challenged the City Council's decision to terminate employee insurance benefits. Applying the *Mariano* test, the Supreme Court affirmed the lower court's grant of summary judgment in favor of the city. The court commented:

In an effort to meet the *Mariano* ... test, the employees' counsel argued that the employees held key positions with the City and that the policies and procedures adopted by the City promoted a stable work force, which was beneficial in carrying out the essential functions of the City's operation. While a secure, stable, and fully insured work force is beneficial to the City, the employees fall short in presenting a material fact to indicate that providing them with insurance was reasonably necessary or of definable advantage to the City.

*Keabler,* 808 P.2d at 207.

Most recently, the court has applied *Mariano* to the theory of promissory estoppel. In *Michie v. Board of Trustees of Carbon County School District No. 1,* 847 P.2d 1006 (Wyo. 1993), the plaintiff was a board member who participated in the school district's health plan with the approval of the board that was sitting in 1984. In 1989, a new board adopted a policy prohibiting any past or present board member from participating in the plan. The Wyoming Supreme Court opined:

> The public policy underlying the rule first articulated in [*Mariano* ] and later applied in *Keabler* is straightforward: A governing body should not be able to deprive its successor in interest of discretion to act in the public good. We believe that this policy applies not only to extended-term governmental contracts, but also to extended-term governmental promises which do not constitute formal contracts.

*Id.* at 1010.

Finally, in *Farnsworth v. Town of Pinedale,* 968 F.2d 1054 (10th Cir.1992), this Court dealt with a similar issue. There, candidates for Town Council had promised voters to make sweeping changes in the town government. Upon taking office, the successful candidates revoked previously adopted personnel policies, chose not to reappoint the Chief of Police, the City Clerk/Treasurer, and the Director of Public Works, and eliminated the police department. The Tenth Circuit Court of Appeals affirmed this Court's grant of summary judgment, pointing out the importance of the public policy of allowing a duly elected official, upon taking office, to appoint individuals of his or

her own choosing to certain key positions. *Id.* at 1057.

Figuly maintains that none of these cases are determinative of the facts currently before the Court. This Court recognizes that the facts in the cases discussed above are not identical to the facts at issue here, but nevertheless finds those cases instructive with respect to the interpretation of the *Mariano* rule and their articulation of public policy applicable to similar situations.

### b. Application to this Case

Figuly argues that in this case his contract with the city was both reasonably necessary and of definable advantage to the city. In support of his position, Figuly states that the nature of the work being done under his direction could not be performed in one year and needed his continued guidance. He also maintains that it was an economic benefit to the city to employ him as a city administrator because he did not require salary increases in exchange for the severance pay provisions of his contract.

■ This, however, is not the inquiry intended by the *Mariano* court. The question which must be decided is not whether the contract itself was necessary or beneficial to the city, rather, the appropriate inquiry is whether, at the time the contract was made, the *extension of the term of the contract* beyond the term of the board's tenure was both reasonably necessary and of definable advantage to the city. *Mariano*, 737 P.2d at 329, 331. Here the answer to that question is no.

■ Mr. Figuly has offered no evidence that the city would have been unable to complete the ongoing projects without his services. Further, it appears that the job market was replete with people who had entered the city management profession and, in fact, the city council was able to hire a new administrator with a contractual provision of only three months' severance pay, not eighteen months as had been given to Figuly. Finally, it appears as if the former city council was doing exactly that which the rule articulated in *Mariano* was designed to prevent. That is, it was attempting to bind its successors to its decisions and policies by

forcing the new council to retain Mr. Figuly as the City Administrator. In the event that the council decided to terminate Figuly's employment, the severance pay guarantee would cost the city approximately $68,000.00, which would be payable to Figuly. This created a great disincentive to the incoming council to terminate Figuly, even if it determined that his performance was inadequate or was no longer desired by the public.

Although the advantage to Mr. Figuly is clear: he could retain his position with the city, the extension of his contract was not reasonably necessary or of definable advantage to the city. Therefore, Figuly's contract was voidable.

### 2. The Voidance

Having determined that Figuly's contract with the city was voidable, the Court next turns to the question of whether the city council properly voided Figuly's contract. The city council argues that it effectively voided the contract when it resolved on January 25, 1993, that "all employment contracts whose terms have not expired with the City Administrator Al Figuly [shall] be declared void and that Mr. Figuly's present pay and benefits shall remain the same and he shall serve at the pleasure of the Mayor and City Council." Figuly contends, on the other hand, that the council did not properly void his contract because no consideration was given to support any change in the contractual relationship.

Figuly cites the case of *Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211 (Wyo.1994), in which the Wyoming Supreme Court held that consideration must support any change in an employment relationship. The court stated as follows:

> The traditional view recognizes that a "promise by an employer or employee under subsisting contract to do more or take less than the contract requires is invalid unless the other party gives or promises to give something capable of serving as consideration."

*Id.* at 219 (citations omitted).

■ Although the *Wilder* decision addresses the general question of what is necessary to modify an existing employment

contract, it does not address the question in the context of the power of newly elected government officials to modify or void existing government contracts. In fact, if the *Wilder* rule were extended to the government contract scenario, the holding in *Mariano* would be rendered meaningless. In other words, if newly elected governing bodies were required to give addition consideration to void contracts that are considered voidable under the *Mariano* analysis, the fact that the contracts are voidable would mean nothing. Certainly, this is not what the Wyoming Supreme Court intended in either the *Wilder* or the *Mariano* decisions. Rather, the import of the *Mariano* decision is to allow newly elected governments to void certain contracts made by their predecessors *without* giving additional consideration or otherwise being penalized.

■ In this case, the city council resolved that "all employment contracts ... with the City Administrator [shall] be declared void...." In so doing the city council did all that was required to void Figuly's contract.

### 3. The Personnel Policy Manual and Contract Implied in Fact

Mr. Figuly argues, in the alternative, that even if the City Council effectively voided his contract, after it did so, he continued to have a contractual relationship with the city of Douglas. Figuly maintains that the personnel manual continued to be in effect after his contract with the city was voided. In addition, Figuly contends that the City Council created an implied-in-fact employment contract when it employed him with the "same salary and benefits" he had under the written contract in January, 1994.

■ Wyoming law recognizes that employee handbooks or policy manuals may, under certain circumstances, create employment contracts implied in fact. *See Wilder*, 868 P.2d at 216–17; *Leithead v. American Colloid Co.*, 721 P.2d 1059, 1063 (Wyo.1986). The parties dispute whether the personnel manual ever applied to Figuly's employment to create a separate contract governing his employment. This Court need not address that question, however, because even if the personnel manual did apply to Figuly's em-

ployment, it was effectively revoked when the city council resolved to void "*all* employment contracts" that Figuly had with the city. Thus, the only question that remains is the nature of Figuly's employment after his contracts with the city were declared void.

■ After the city council voided his contract, the council informed Figuly that his employment would continue "at the pleasure of the Mayor and City Council." This language created an at-will employment relationship between Figuly and the city council. Moreover, the city's Charter Ordinance Number 2 provides that the city administrator serves "at the pleasure of the Mayor and Council," and specifically excludes the City Administrator from the purview of the city's personnel policies:

> [e]xcept for the Town Administrator, Attorney and Municipal Judge, all employees shall be appointed suspended, transferred, and removed by the Town Administrator, subject to the personnel regulations of the Town as adopted by the Council.

(emphasis added).

■ Figuly contends that his termination was motivated by personal vendettas on the part of some newly elected council members. Whether or not this is true is irrelevant—an at-will employee may be terminated for any reason or for no reason at all. *See Wilder*, 868 P.2d at 211; *Lankford v. True Ranches, Inc.*, 822 P.2d 868, 872 (Wyo.1991); *Chasson v. Community Action of Laramie County, Inc.*, 768 P.2d 572, 575 (Wyo.1989); *Rompf v. John Q. Hammons Hotels, Inc.*, 685 P.2d 25, 27 (Wyo.1984).

Figuly also argues that because the council decided that his "present pay and benefits [would] remain the same" when it continued his employment, he remained entitled to the severance pay provision contained in his previous contract. Figuly reasons that the term "benefits" includes the eighteen months of severance pay which was provided for in his voided contract. This, however, was not Figuly's understanding of the council's action at the time. Indeed, it appears that Figuly believed that his severance pay would not be included as a benefit in his continued employment. A letter from his attorney to Figuly

states, in pertinent part, "[a]s we have discussed, there has really been no change in your employment with the City with the exception of the severance pay issue."[3] In addition, most council members have attested by affidavit or deposition that the intent of the resolution was to permit Figuly to retain his insurance and retirement benefits, but to eliminate his severance pay.

Moreover, Figuly's severance pay was an election issue. Figuly himself provided councilwoman Diane Harrop with a memorandum which explained how to defend the severance pay issue; and at a candidate forum held on August 4, 1992, there was considerable opposition to the severance provision, which was characterized as a "golden parachute." Further, it would have been illogical for the council to terminate Figuly's contract and then to restore all terms that might have been of benefit to him. To do so would have been to improve Figuly's position to the detriment of the city.

■ For these reasons, this Court concludes that there is no factual issue as to the interpretation of the council's January 24, 1994 resolution. There can be no doubt that after his contract was voided, Figuly's employment as the city administrator was at-will and his benefits did not include a right to eighteen months of severance pay.

### 4. Conclusion

In sum, based upon precedent and public policy considerations, the Court has concluded that Figuly's contract with the city was voidable and that the city council properly voided it. After that time, Figuly was an at-will employee whose employment with the city could be terminated for any reason or for no reason. In addition, Figuly was not entitled to eighteen months of severance pay which was a term of his voided contract. Accordingly, in ultimately terminating his employment and giving him 30 days severance pay, the city council did not breach any

employment contract that it had with Mr. Figuly.

### B. The 42 U.S.C. § 1983 Civil Rights Claim

42 U.S.C. § 1983 (1988) provides a remedy for constitutional violations that occur under the color of state law. In this case, Figuly claims that the city council's actions constituted a violation of his due process rights.

The Fourteenth Amendment requires procedural due process before a state may deprive a person of life, liberty or property interests. U.S. Const. amend. XIV § 1. The existence of a property interest in employment depends upon whether the employee had a "legitimate claim of entitlement" to the employment, rather than an "abstract need or desire" for, or "unilateral expectation" of continued employment. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Such property interests "are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.; Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Perry v. Sindermann*, 408 U.S. 593, 601–02 n. 7, 92 S.Ct. 2694, 2699–700 n. 7, 33 L.Ed.2d 570 (1972).

■ Thus, whether Figuly had a protected property interest in continued employment depends upon the law of Wyoming. According to the Wyoming Supreme Court, the right to be discharged only for cause creates a property interest in continued employment. *Abell v. Dewey*, 847 P.2d 36, 41 (Wyo.1993). Figuly contends that his written contract with the city and his implied contract which allegedly existed under the city's personnel policy manual and its promises after it voided his earlier contract pro-

---

**3.** The Court notes that this letter is arguably covered by the attorney-client privilege. Even assuming that the document is an attorney-client communication, under Wyoming law, the privilege is lost if the communication itself is disclosed to a third party, whether the disclosure is inadvertent or intentional. *See Dobbins v. State,*

483 P.2d 255 (Wyo.1971) (defendant's statements to his counsel which were inadvertently overheard by a third party were not privileged communications). In this case the letter was made a part of Mr. Figuly's personnel file. Accordingly, any privilege that may have applied has been lost.

vided him a property interest in his employment.

 This Court has concluded in its discussion above, however, that the city council properly voided Figuly's contract in January of 1993. The act of voiding the contract did not violate Figuly's rights to due process because, once the new city council was elected, it had the right to void the contract under state law. Accordingly, Figuly had no property interest in the continuation of his employment at that time.[4] Moreover, at the time he was discharged, Figuly was an at-will employee of the city. As such, he had no property interest in his employment and thus was not entitled to due process. As a result, Figuly cannot maintain his civil rights cause of action.

### C. The State Law Claims

In addition to his breach of contract claims, Figuly brings state law claims of breach of the implied covenant of good faith and fair dealing, the tort of outrage, negligence and defamation. Because the Court has held that Figuly's civil rights claim must fail, the Court no longer has jurisdiction over his remaining state law claims. 28 U.S.C. § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim ... [if] the district court has dismissed all claims over which it has original jurisdiction." Accordingly, this Court dismisses Figuly's remaining state law claims without prejudice.[5]

**THEREFORE, IT IS**

**ORDERED** that defendants' Motion for Summary Judgment with respect to plaintiff Figuly's breach of contract and 42 U.S.C. § 1983 claims be, and the same hereby is, **GRANTED.** It is further

**ORDERED** that plaintiff Figuly's negligence claim be, and the same hereby is, **DISMISSED WITH PREJUDICE.** It is further

**ORDERED** that plaintiff Figuly's remaining state law claims of breach of the implied covenant of good faith and fair dealing, outrage, and defamation be, and the same hereby are, **DISMISSED WITHOUT PREJUDICE.**

---

4. If Figuly's contract had been voided by the prior city council, however, he may have had a valid due process claim. In that event, Figuly's contract may not have been voidable. If that were indeed the case, an attempt at voiding the contract would constitute a violation of due process.

5. Figuly has conceded that his negligence claim is barred by the Wyoming Governmental Claims Act. That act provides that:

> [a] governmental entity and its public employees while acting within the scope of duties are granted immunity from liability for any tort except as provided in Wyo.Stat. § 1–39–105 through 1–39–112. Any immunity based on a contract entered into by a governmental entity

is waived except to the extent provided by the contract if the contract was within the powers granted to the entity and was properly executed....

Wyo.Stat. § 1–39–104(a). Unless a claim falls within one of the statutory exceptions for torts, or is in contract, it is barred by the Claims Act. *See Abelseth v. City of Gillette,* 752 P.2d 430, 433 (Wyo.1988); *Boehm v. Cody Country Chamber of Commerce,* 748 P.2d 704, 709 (Wyo.1987). Because there is no exception for a negligent breach of contract claim, such as the one brought here, this claim must be dismissed. *See Wilder,* 868 P.2d at 222 (refusing to recognize claim of negligent breach of contract).