NORTH FINN, a partnership, Plaintiff,

v.

D.L. COOK, Defendant.

No. 92–CV–0165–B.

United States District Court,
D. Wyoming.

June 23, 1993.

Randall T. Cox, Sheehan & Cox, Gillette, WY, for plaintiff.

David G. Lewis, Casper, WY, A.G. McClintock, Fitzgerald Law Offices, Cheyenne, WY, for defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

BRIMMER, District Judge.

This matter came before the Court on April 1, 1993. Supplemental briefs were filed on May 3, 1993. The Court, having considered the materials on file both in support of and in opposition to the motion, having considered the arguments of counsel, and being fully advised in the premises, FINDS and ORDERS as follows:

## Background

The United States issued a mineral rights lease in Campbell County, Wyoming to one Nelson, who assigned the lease to defendant D.L. Cook ("Cook"). Cook did not develop the lease. Instead, he "farmed out" portions of the leased property to Kelly Oil and Gas Company.

Cook agreed that upon completion of a well capable of producing oil and/or gas in paying quantities, he would deliver to Kelly:

> an assignment covering the 40 acre drill site ... conveying depths from 2,500 feet below the surface to 100 feet below the deepest depth drilled, of an undivided 75% of ⅞ths of all right, title and interest of Cook in the SE/4 SE/4 of Section 6, T54N, R73W, Campbell County, Wyoming....

(Farmout and Option Farmout Agreement at p. 5). The Farmout agreement further provided that:

> Following payout[1] ..., Cook shall be reassigned by Farmee, a fully participating thirty percent (30%) backin working interest in the Test Well. (emphasis added).[2]

The interests before and after payout are set out in the Farmout Agreement as follows:

| Before Payout | Working Interest | Net Revenue Interest |
|---|---|---|
| Kelly | 100% | 75% |
| Cook | Overriding Royalty | 12.5% |
| U.S.A. | Royalty | 12.5% |
| | | 100% |

| After Payout | Working Interest | Net Revenue Interest |
|---|---|---|
| Kelly | 70% | 52.5% |
| Cook | 30% | 22.5% |
| U.S.A. | | 12.5% |
| Cook | | 12.5% |
| | | 100% |

In 1989 and 1990 Kelly drilled the # 1–7 W. Oedekoven Well located on the NE/4NE/4 of Section 7, Township 54 North, Range 73 West, and D.L. Cook # 2–7 on the SE/4NE/4 of Section 7, Township 54 North, Range 73 West. The focus in this order is on well # 1–7.

Well # 1–7 was deemed capable of producing oil and/or gas in paying quantities. On June 1, 1990, in accordance with the Farmout

---

1. Payout is defined as "that period of time until Farmee has recovered from the gross proceeds of production attributable to the Test Well an amount equal to the Net Cost."

2. Cook also reserved an overriding royalty interest.

Agreement, Cook transferred 100% of his working interest to Kelly (100% of 75%), subject to a 30% reversionary interest after payout. The language in the transfer agreement limited the conveyance as follows:

> Limited to those depths between 2500 feet below the surface and 100 feet below the total depth drilled in the # 1–7 W. Oedekoven Well located on transferred lands and **subject to** the terms and conditions of the Farmout and Option Farmout dated June 2, 1989 between the parties hereto wherein transferor reserved a 30% reversionary interest after payout. (emphasis added).

Cook contends that well # 2–7 was not capable of producing oil and/or gas in paying quantities. Therefore, the working interest in # 2–7 was never conveyed to Kelly.[3]

Kelly failed to pay bills for drilling and completing the wells. Liens were filed, and Kelly's property interests were foreclosed. A sheriff's sale was conducted in October, 1991. Plaintiff North Finn purchased the foreclosed property for $150,000. North Finn received a certificate of purchase from the Campbell County Sheriff's office on October 31, 1991. A court order confirming the foreclosure sale was entered on December 11, 1991. The order described the foreclosed property as follows:

> All right title and interest of Kelly Operating Company, Tom Kelly and Kelly Oil and Gas (collectively "Kelly"), in and to the federal oil and gas lease known as Bureau of Land Management Lease No. 1118346, and all right title and interest of Kelly in any wells located on such lease, and in any production of oil, gas or minerals attributable to Kelly's interests, including without limitation the wells known as D.L. Cook Federal No. 1–7 and Kelly–Cook Federal No. 2–7....

The property was not redeemed and North Finn received a Sheriff's deed on April 16, 1992.

Many of the liens filed by parties that supplied goods and services for drilling and completion of well # 1–7 and well # 2–7 named Cook as an owner of the lease, and

most served him with notice of filing of liens. Cook was also named as a party defendant in a consolidated complaint in case no. 17631 filed by Oedekoven Water & Hot Oil Service, KR Well Service Inc., Cole's Oilfield Service Inc., and Melgaard Construction Co. Cook was named in the cross claims of five other firms named as defendants in that complaint. However, the records do not indicate that a summons was ever issued to Cook on the complaint or the cross claims.

Plaintiff North Finn filed this action seeking a declaratory judgment that it is the owner of federal oil and gas lease no. 118346, including wells # 1–7 and # 2–7. Defendant Cook asserts a counterclaim for a declaratory judgment that North Finn's interest in well # 1–7 is subject to a reassignment to Cook of a fully participating 30% backin working interest. Cook also seeks to quiet his title to well # 2–7.

### Standard of Review

"By its very terms, [the Rule 56(c) ] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

The trial court decides which facts are material as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. at 2510; *see also Carey v. United States Postal Service*, 812 F.2d 621, 623 (10th Cir.1987). In considering a party's motion for summary judgment, the court must examine all evidence in the light most favorable to the nonmoving party. *Barber v. General Elec. Co.*, 648 F.2d 1272, 1276 n. 1 (10th Cir.1981).

Summary judgment may be entered "against a party who fails to make a sufficient showing to establish the existence of an

---

**3.** North Finn counters that well # 2–7 is capable of producing oil and/or gas in paying quantities, and argues that Cook should be required to transfer well # 2–7 to Kelly.

element essential to that party's case, and on which that party will bear the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Carey,* 812 F.2d at 623. The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Carey,* 812 F.2d at 623.

## Discussion

*Well # 1–7*

The agreement between Cook and Kelly provided that upon completion of a well capable of producing oil and/or gas in paying quantities, Cook would convey a 100% (of 75%) working interest in well # 1–7 to Kelly. Following payout, Kelly was to convey a 30% (of 75%) working interest back to Cook. The obvious reason for structuring the deal this way was to allow Kelly, the driller, to take all of the tax deductions associated with drilling the well. Payment to Cook is in the form of reassignment after payout.

The focus in this order is whether North Finn's interest in the well is subject to Cook's 30% reservation.

### Cook's Interest

It is necessary to identify Cook's 30% interest in order to determine its viability. The transfer agreement characterizes Cook's interest as a "30% reversionary interest after payout." The farmout agreement describes Cook's interest as a "fully participating thirty percent (30%) backin working interest in the test well."

Cook's interest is arguably one of the following: (1) a possibility of a reverter; (2) a covenant running with the land; or (3) a personal covenant. Plaintiff North Finn argues that Cook's interest is a personal cove-

nant. Defendant Cook contends that it is a covenant running with the land. The Court, for reasons stated below, finds that Cook's interest is a possibility of reverter.

A possibility of reverter is "a future interest left in the transferor[4] or his successor in interest on a transfer in fee simple determinable or in fee simple conditional."[5] LEWIS SIMES, LAW OF FUTURE INTERESTS, § 13 at 28 (1966). In other words, it is a "reversionary interest subject to a condition precedent." RESTATEMENT (SECOND) OF PROPERTY, § 154 (1936); *see also Williams v. Watt,* 668 P.2d 620, 629 (Wyo.1983). Upon the happening of the event named in the special limitation, the property automatically reverts to the grantor.[6] LEWIS SIMES, LAW OF FUTURE INTERESTS, § 13 at 29 (1966).

The transfer agreement conveyed the NE/4NE/4 of Section 7, Township 54 North, Range 73 West, "limited to ... depths between 2500 feet below the surface and 100 feet below the total depth drilled in [well # 1–7] **subject to the terms and conditions of Farmout and Option Farmout dated June 2, 1989 between the parties hereto wherein Transferor reserved a 30% reversionary interest after payout.**" It is significant that the plain language of the transfer agreement refers to Cook's interest as a "30% reversionary interest."

The farmout agreement provides that "[f]ollowing payout ... Cook shall be reassigned by Farmee, a fully participating thirty percent (30%) backin working interest in the Test Well." Under the terms of the farmout agreement, "payout" is the condition precedent to reversion.

Although a possibility of reverter may be created without any expression of intention in the creating instrument that the property

---

4. A future interest is "left in the transferor" when the transferor transfers less than his entire interest. RESTATEMENT (SECOND) OF PROPERTY, § 154 (1936).

5. A possibility of reverter is alienable together with or apart from the surface. 2 HOWARD WILLIAMS AND CHARLES MEYERS, OIL AND GAS LAW, § 336 at 188 (1992).

A possibility of reverter is exempt from the rule against perpetuities. *Id.* § 335 at 186.4.

6. The automatic reversion upon the happening of an event differentiates a possibility of reverter from a power of termination. "[A] power of termination does not take effect in possession on the breach of the condition, but only when the owner of such power of termination, thereafter, by appropriate acts, indicates his election to forfeit the estate held on condition subsequent." LEWIS SIMES, LAW OF FUTURE INTERESTS, § 14 at 30 (1966).

is to revert to the transferor on the happening of the named event, in the instant case, the farmout agreement clearly expresses the reversionary intent of the parties. *Id.* A 30% working interest reverts to Cook following payout. Because payout may not occur, the interest is a possibility of reverter rather than a reversion. *See* 1 HOWARD WILLIAMS AND CHARLES MEYERS, OIL AND GAS LAW, § 301 at 437 (1992) (Meyers states that a "thereafter" clause providing that the lease should last for a certain period of time, and so long thereafter as oil or gas is produced is also usually called a possibility of reverter).

Plaintiff North Finn argues that Cook's interest is not a possibility of reverter because the 30% working interest does not revert automatically to Cook, but requires the farmee to reassign the interest.[7] While the Court notes that the agreements could have been more artfully drawn, the intent of the parties to create a reversionary interest is clear. *See Town of Moorcroft v. Lang,* 779 P.2d 1180, 1184 (Wyo.1989) (The court looked to the intention of the dedicator. "It was plainly the intention of the dedicator to part with the title to so much of its property only as was necessary to effectuate [his] purpose." (*citing City of Leadville v. Bohn Mining Co.,* 37 Colo. 248, 86 P. 1038, 1040 (1906))). Therefore, the Court finds that Kelly had a determinable fee to a 100% working interest in well # 1-7 **until** payout, at which time a 30% working interest reverts to Cook. The provision requiring reassignment by the farmee will be enforced by the Court following payout, if it occurs, as a formality signalling that reversion has occurred.[8]

---

7. Even if this fact were decisive, the logical argument would be that Cook's interest is a power of termination rather than a possibility of reverter. *See* note 6 *supra.*

8. It is the Court's view that Cook's interest is best characterized as a possibility of reverter. However, even if Cook only had a lesser interest, it is the Court's view that he held at the very least a covenant running with the land.

In order to find that a covenant runs with the land, the following elements must be established:
1. The original covenant must be enforceable;
2. The parties to the original covenant must intend that the covenant run with the land;
3. The covenant must touch and concern the land; and
4. There must be privity of estate between the parties.

*Jackson Hole Racquet Club v. Teton Pines,* 839 P.2d 951, 956 (Wyo.1992).

North Finn attacks the elements of "privity of estate" and "touch and concern the land." However, the Court finds that there is privity of estate because although North Finn was not an original party to the agreement, by purchasing Kelly's interests at the foreclosure sale, North Finn stepped into Kelly's shoes, subjecting it to all defects and equities which could have been asserted by Kelly. *See Lombardi v. Sinanides,* 71 Cal.App. 272, 235 P. 455, 456 (1925). The Court finds that this relationship is sufficient to establish privity.

The Court also finds that a covenant to convey a 30% working interest to Cook is related to the land to such an extent that it touches and concerns the land. The Wyoming Supreme Court has held that a conveyance or reservation of a mineral interest gives title to oil in place. *Picard v. Richards,* 366 P.2d 119, 123-24 (Wyo.1961). Further, "[o]il and gas, while in situ, are part of the realty; part of the corpus of the land." *Williams,* 668 P.2d at 624 (*quoting State ex rel. School Dist. No. 1 in Weston County v. Snyder,* 29 Wyo. 163, 212 P. 758, 762 (1923)).

What is essential is that the burdens and benefits created are not the personal duties or rights of the parties to a covenant that exist independently from the ownership of an interest in the land. [citations omitted]. In *Neponsit Property Owner's Association v. Emigrant Industrial Savings Bank,* [278 N.Y. 248] 15 N.E.2d 793, 796 (1938), the court stated: "[T]he distinction between covenants which run with land and covenants which are personal, must depend upon the effect of the covenant on the legal rights which otherwise would flow from ownership of land and which are connected with the land. The problem then is: Does the covenant in purpose and effect *substantially* alter these rights?

*Flying Diamond Oil v. Newton Sheep Co.,* 776 P.2d 618, 623 (Utah 1989). "[M]ost courts have considered promises to pay money in the context of benefit to the covenantor; thus payments for something associated with the covenantor's property have generally been held to touch the land." *Id.* at 625 *quoting* Note, COVENANTS RUNNING WITH THE LAND: VIABLE DOCTRINE OR COMMON-LAW RELIC?, 7 HOFSTRA L. REV. 139, 164-65 (1978).

Thus the elements of "privity of estate" and "touch and concern the land" have been met. The Court also finds that the covenant to convey a 30% working interest to Cook meets the other two elements which are required to find that a covenant runs with the land. In summary, the Court finds that Cook's interest is best characterized as a possibility of reverter, and at the very least, it is a covenant running with the land. Under these two characterizations, the result is the same. Cook's interest remains viable unless extinguished in the foreclosure proceeding.

### Effect of Foreclosure Action on Cook's Interests

■ Plaintiff North Finn contends that liens attached to defendant Cook's 30% reversionary interest. There has been no assertion that the liens attached by contract. Therefore, the Court will focus on whether liens attached to Cook's interest by virtue of statute.

WYO.STAT. § 29–3–103 provides that:

(a) Every person who works upon or furnishes material, whether incorporated into the real property or not, **under contract with the owner** of any interest in real estate or. with an agent, trustee or receiver of an owner has a lien to secure payment for:

(i) Constructing, altering, digging, drilling, driving, boring, operating, completing or repairing any wells, mines or quarries.

\* \* \* \* \* \*

(b) Notwithstanding subsection (a) of this section ...

(i) If work is performed for or materials are furnished the **owner of an estate less than a fee** the lien granted by this chapter **shall not extend to the underlying fee or royalty interest unless expressly provided by contract with the owner of the underlying fee or royalty interest.**

(ii) If work is performed for or materials furnished to the **owner, part owner or lessee** of the working interest in only a portion of the acreage covered by a lease, the lien granted by this chapter shall be restricted to that portion of the acreage.

WYO.STAT. § 29–3–110 states that:

Nothing in this act [chapter] shall be construed to fix a greater liability against the owner of the land or leasehold ... than the price or sum **stipulated by the owner** to be paid for the materials or services furnished or labor performed.

North Finn, in its memorandum opposing partial summary judgment, concedes that Cook's 12.5 per cent overriding royalty interest was not affected by the lien foreclosure proceedings. *Cities Service Oil Co. v. Pubco Petroleum Corp.*, 497 P.2d 1368, 1373 (Wyo. 1972). However, North Finn argues that Cook's 30% backin working interest is lienable, and that the interest was foreclosed. *JHJ Limited I v. Chevron U.S.A., Inc.*, 617 F.Supp. 729 (M.D.La.1985). North Finn broadly interprets WYO.STAT. § 29–3–103(a) as authorizing the imposition of liens against any "owner" of a lease.

However, the Court is not convinced. "Oil and gas lien laws, like other lien laws, are purely statutory; they must be strictly construed; and their scope cannot be extended by implication." *Burg v. Ruby Drilling Co., Inc.*, 783 P.2d 144, 152 (Wyo.1989); *Cities Service Oil Co.*, 497 P.2d at 1371. The plain language of WYO.STAT. § 29–3–103(a) suggests a narrower interpretation. It only authorizes a lien by a person **"under contract with the owner** of any interest in real estate." (emphasis added).

In *Cities Service Oil Co.*, the Wyoming Supreme Court adopted a narrow interpretation of Wyoming's lien statute. The court stated that "the intent of the legislature was to restrict the lien in the case of an oil well to the leasehold estate of the party who contracts for the drilling." *Cities Service Oil Co.*, 497 P.2d at 1371. The court went on to say that "[n]o lien can be created under our law without a contract with an owner or part-owner, either legal or equitable, upon the property upon which the lien is established." *Id.* at 1373. The court concluded that liens will not attach to the underlying fee or royalty interest unless expressly provided by contract. *Id.*

In *Adobe Oil & Gas Corp. v. Getter Trucking, Inc.*, 676 P.2d 560 (Wyo.1984), a subcontractor, who moved an oil rig on site at the behest of the drilling contractor, brought an action to foreclose a lien against the oil and gas leasehold. The Wyoming Supreme Court held that "a subcontractor is not entitled to a lien against the leasehold unless the contractor has an agreement with the owner that the owner will pay for the services asserted in the lien." *Id.* at 563.

In *Burg*, Ruby Drilling Company filed a lien against the oil and gas leasehold. The Wyoming Supreme Court held that "Ruby's

contractual right is more analogous to the farmout situation than an operator or contractor situation, and therefore, Ruby's contract right to recover development costs out of production did not confer the trial court with statutory jurisdiction to grant a lien." *Burg*, 783 P.2d at 152. The court reasoned that "[u]nder a normal farmout agreement no separate debt exists because the Farmee assumes the risk that it might lose its development costs in exchange for the possibility that it will attain production and receive an outright share of the working interest in the lease." *Id.* at 151 (*citing Johnson v. Anderson*, 768 P.2d 18, 22 n. 3 (Wyo.1989) (*citing* 8 HOWARD WILLIAMS AND CHARLES MEYERS, OIL AND GAS LAW, MANUAL OF OIL AND GAS TERMS, at 342 (1987))).

The Wyoming Supreme Court has further held that "a subcontractor has a right to a lien only to the same extent that the original contractor would have lien rights...." *Adobe Oil & Gas Corp.*, 676 P.2d at 564 (*citing National Supply Co.—Midwest v. Weaver*, 35 Wyo. 224, 248 P. 353, 355 (1926)).

In the instant case, there is no evidence of any agreement by Cook to pay Kelly or any of the subcontractors for services and materials rendered in connection with the drilling of well # 1–7. Paragraph 2(b) of the farmout agreement provides that "the test well shall be drilled, tested, completed, and equipped ... at the sole cost, risk, and expense of Farmee." Paragraph 6 provides that "[a]ll operations hereunder shall be at the sole cost, risk and expense of Farmee." Because Cook did not contract to pay for drilling or other associated costs, the Court holds that the liens filed in the foreclosure proceeding cannot attach to Cook's interests in well # 1–7. Therefore, Cook's interests were not foreclosed.

 Even if Cook's interests were lienable, the Court finds that Cook's 30% reversionary interest would not have been foreclosed. Plaintiff North Finn concedes that Cook was never personally served with a summons for the foreclosure proceeding.

Personal service achieves jurisdiction for the forum court over the subject matter and the listed defendants by issuance of a summons by the clerk of court and service by the sheriff or other authorized person, W.R.C.P. 4(c), on the individual or entity to be found within the jurisdiction pursuant to W.R.C.P. 4(d)....

*In Interest of DG*, 825 P.2d 369, 374–75 (Wyo.1992). Further, a "[j]udgment rendered without proper service when there is no appearance is a nullity and void." *Parker v. Haller*, 751 P.2d 372, 374 (Wyo.1988); *see also Pease Brothers, Inc. v. American Pipe & Supply Co.*, 522 P.2d 996, 1003 (Wyo.1974). (Fact that officials of corporation had actual notice of suit did not cure defect in service of process).

Further, the August 27, 1991 order of foreclosure ordered that Kelly's property be sold to satisfy the oil and gas lien claims of 13 creditors of Kelly. The order described the property to be sold as follows:

**All right title and interest of Kelly Operating Company**, Tom Kelly and Kelly Oil and Gas (collectively "Kelly"), in and to the federal oil and gas lease known as bureau of Land Management Lease No. 118346, and **all right title and interest of Kelly** in any wells located on such lease, and in any production of oil, gas or minerals **attributable to Kelly's interests**, including without limitation the wells known as D.L. Cook Federal No. 1–7 and Kelly–Cook Federal No. 2–7, located as follows:

*D.L. Cook Federal 1–7*

NE/4NE/4 T54N, R73W, Section 7, Sixth Principal Meridian, Campbell County, Wyoming.

*Kelly–Cook Federal 2–7*

E/2NE/4 T54N, R73W, Section 7, Sixth Principal Meridian, Campbell County Wyoming. (emphasis added).

The certificate of purchase issued by the Sheriff, and the order confirming foreclosure sale contained an identical description of the interests foreclosed. It is significant to this Court that Judge O'Brien's orders spoke only to Kelly's interests, and did not order the foreclosure of Cook's interests.

In conclusion, the Court finds that Cook's 30% interest in well # 1–7 is a possibility of reverter which was not extinguished in the foreclosure proceeding. Factual issues re-

main as to when and if payout has occurred. Other issues regarding ownership interests in well # 2–7 also remain outstanding.

**THEREFORE,** it is **ORDERED** that defendant's motion for partial summary judgment is **granted** to the extent outlined in this order. The Court finds that Cook's 30% interest is a possibility of reverter which was not extinguished in the foreclosure proceeding, and therefore remains viable. Defendant Cook is entitled to proceed to a determination as to whether its 30% reversionary interest has matured.