**MOUNTAIN WEST MINES, INC., Plaintiff,**

v.

**CLEVELAND–CLIFFS IRON COMPANY, Power Resources, Inc., and Pathfinder Mines Corporation, Defendants.**

**No. 04–CV–122–B.**

United States District Court, D. Wyoming.

July 13, 2005.

'any occupation' standard." *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1289 (10th Cir.2002).

Harold G. Morris, Jr., Lindquist & Vennum, John C. Smiley, Lindquist & Vennum, Patrick D. Frye, Lindquist & Vennum, Denver, CO, for Plaintiff.

J. Michael Morgan, Lohf Shaiman Jacobs Hyman & Feiger, Stephen E. Kapnik, Lohf Shaiman Jacobs Hyman & Feiger, Denver, CO, Tom C. Toner, Yonkee & Toner, Sheridan, WY, David R. Hammond, Davis Graham & Stubbs, Denver, CO, Thomas A. Nicholas, III, Hirst & Applegate, Cheyenne, WY, Frank D. Neville, Williams Porter Day & Neville, Scott P. Klosterman, Williams Porter Day & Neville, Casper, WY, for Defendant.

## ORDER ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON BREACH OF CONTRACT AND FOR DECLARATORY RELIEF AND RULING ON VARIOUS COUNTERCLAIMS

BRIMMER, District Judge.

This matter comes before the Court on Magistrate Beaman's Report and Recommendation Regarding Defendants' Joint Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment on Breach of Contract and for

Declaratory Relief. The Court, having reviewed the Magistrate's Report and Recommendations and being otherwise fully advised, **FINDS** and **ORDERS** as follows:

### Statement of Parties and Jurisdiction

Plaintiff Mountain West Mines, Inc., is a Nevada corporation qualified to do business in Wyoming, with its principal place of business in Duluth, Minnesota.

Defendant Cleveland Cliffs Iron Company is an Ohio corporation qualified to do business in Wyoming, with its principal place of business in Cleveland, Ohio.

Defendant Power Resources, Inc., is a Wyoming corporation with its principal place of business in Lakewood, Colorado.

Defendant Pathfinder Mines Corporation is a Delaware corporation qualified to do business in Wyoming, with its principal place of business in Mills, Wyoming.

This is a civil action between citizens of different states with an amount in controversy exceeding $75,000.00, exclusive of interest and costs. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Venue is proper pursuant to 28 U.S.C. § 1391(b).

The Erie doctrine requires this Court to apply federal law to procedural matters and state law to substantive issues. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This Court will apply the law of the State of Wyoming to the pertinent issues at hand.

### Background

This case originally came before the Court on Plaintiff Mountain West's ("Mountain West") claims for declaratory relief, breach of contract, and breach of fiduciary duty. In the 1960s, Mountain West obtained mining rights for numerous properties in the Powder River Basin. On May 17, 1967, Mountain West and Defendant Cleveland–Cliffs Iron Company ("Cliffs") entered into an "Option and Agreement" with respect to uranium properties in the Powder River Basin. The Option and Agreement granted Cliffs the option to acquire from Mountain West various mining rights and surface rights in exchange for payments to Mountain West, including percentage royalty payments on uranium production. Specifically, the Option and Agreement contained an Area of Mutual Interest clause ("AMI clause") which obligated Cliffs to pay production royalty on uranium from any properties acquired by Cliffs within the defined area of mutual interest. The AMI clause states:

> With respect to "other lands" and any and all lands acquired by "Mountain West" in the "Powder River Basin" ... by lease or otherwise after the date of this Option and Agreement, said lands will be assigned or deeded at "Cliffs" request ... subject only to a two and one-half percent (2–1/2%) overriding royalty or reserved royalty to "Mountain West" ... It is further understood and agreed that "Mountain West" will be entitled to and "Cliffs" agree [sic] to convey a two and one-half percent (2–1/2%) royalty interest to "Mountain West" in any lands it may hereafter acquire in the "Powder River Basin" ...

Ex. D–3, Option and Agreement at MWM 000006–7.

On May 14, 1969, Cliffs exercised its option and obtained an interest in properties known as the Greasewood Creek, North Butte, Four Mile and North Bing

properties ("Original Four"). Cliffs transferred mining claims and leases (the Four Mile and North Bing properties) to Central Electricity Generating Board Exploration, Inc. ("CEGB") in 1986. CEGB sold these lands to Power in 1996. Cliffs also sold property (Greasewood Creek and North Butte) to Uranerz (U.S.A.), Inc. ("Uranerz") in 1987. Uranerz sold these lands to Pathfinder in 1991, who then sold the lands to Power in 2001. It is undisputed that no royalty payments are currently owed on the Original Four properties, which are the properties owned by Cliffs and ultimately obtained by Power and Pathfinder. It is also undisputed that if uranium production were to occur on the Original Four properties, a royalty interest would be owed to Mountain West by either Cliffs or its successors, Power and Pathfinder.[1] However, this transfer of property from Cliffs to a third party to Power and Pathfinder leads Mountain West to argue that Power and Pathfinder owe royalty payments on any property that Power and Pathfinder ultimately obtain in the Powder River Basin because Mountain West believes that the AMI clause binds all of Cliffs' successors in interest. Thus, Mountain West argues that it is owed royalty payments by Power and Pathfinder for uranium production on other properties owned by Pathfinder and Power, specifically royalties from the Smith Ranch and the Highland Uranium Project ("Highland properties"). Neither Mountain West nor Cliffs ever owned the Highland properties, nor has either ever had any type of interest in these properties. However, Mountain West maintains that by obtaining interests in the Original Four properties from Uranerz and CEGB, who obtained those interests from Cliffs, the AMI clause requires Power and Pathfinder to pay royalties on both the Original Four properties *and* on any other property obtained by Power or Pathfinder in the Powder River Basin, regardless of when the purchase takes place or who the property is obtained from.

Defendants filed a joint motion for summary judgment on all claims. Plaintiff filed a motion for partial summary judgment on breach of contract and for declaratory relief. The issues were referred, with the consent of the parties, to Magistrate Judge Beaman pursuant to 28 U.S.C. § 636(b)(1)(B). Judge Beaman heard oral argument on April 29, 2005, and issued the above-referenced Report and Recommendation on May 27, 2005. Plaintiff filed an Objection to the Report and Recommendation on June 10, 2005.

## Standard of Review

According to 28 U.S.C. § 636(b)(1)(B), a district judge may designate a magistrate judge to conduct hearings on dispositive issues before the court. In such a case, the magistrate judge will submit proposed findings of fact and recommendations to the district court judge. *Id.* A copy of this report and recommendation will be mailed to the parties, at which point the parties have ten days to file written objections to such proposed findings and recommendations. *Id.* at § 636(b)(1)(C). Once the court receives the report and written objections thereto, the district judge:

... shall make a de novo determination of those portions of the report or speci-

1. Currently, uranium is not being produced on these lands. However, even if uranium production occurs, Cliffs and its successors would not begin paying royalty payments un-til the amount exceeds the 1.3 million advance royalty payment paid by Cliffs to Mountain West.

fied proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636. *See also* Fed.R.Civ.P. 72. In conducting a *de novo* review, the court "should make an independent determination of the issues ... The district judge is free to follow [a magistrate's recommendation] or wholly to ignore it, or, if he is not satisfied, he may conduct the review in whole or in part anew." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir.1988) (internal citations and quotations omitted).

### *Discussion*

In accordance with the above-stated standard, the Court has carefully reviewed Magistrate Beaman's Report and Recommendation and Mountain West's objections to this report. The Court **FINDS** that Magistrate Beaman's Report and Recommendation ("Recommendation") shall be adopted in its entirety. In addition, with respect to Mountain West's objections to the Report, the Court **FINDS** as follows:

1. *Whether the Mountain West Agreements Bind Cliffs' Successors*

■ Mountain West argues that the Recommendation completely ignores the "successors and assigns" provisions in various agreements between the parties. However, it is clear that the Recommendation does not ignore this language. The Recommendation explicitly recognizes that either Cliffs or Cliffs' successors, i.e., Pow-

er and Pathfinder, are responsible for royalty payments to Mountain West should uranium production commence on the Original Four properties. *See* Recommendation, p. 18. In fact, Defendants do not assert that language within the Option and Agreement does not bind successors in this manner. There is absolutely no dispute that when Cliffs exercised its Option to acquire land within the Powder River Basin, Cliffs and its successors would be responsible for royalty payments owed to Mountain West. In other words, once Cliffs contracted with Mountain West to acquire land, it could not escape its responsibility for royalty payments by conveying that land to a third party who would not be bound by this agreement.

Thus, Mountain West is inaccurate in summarily arguing that the Recommendation ignores language regarding Cliffs' successors. Clearly, all parties, and Judge Beaman, have recognized that the royalty payments on the Original Four properties run with the land. However, the recognition that royalty payments on lands acquired by Cliffs will also be owed by Cliffs' successors is far different than finding that the AMI Clause contained within the original Option and Agreement entered into by Mountain West and Cliffs will bind Cliffs' successors, the effect of which would be to allow Mountain West to obtain royalty interests in land neither it nor Cliffs ever owned.

The real issue in this case is not whether portions of the contract bind successors, but whether a clause within a contract executed only by Mountain West and Cliffs should bind successors. Thus, Mountain West's argument that the Recommendation ignores the successors and assigns language is not only inaccurate, it is irrelevant. The Recommendation does, in fact,

recognize that Cliffs' successors are burdened by royalty payments to Mountain West on land acquired by Cliffs in the Powder River Basin and subsequently conveyed to Power and Pathfinder. The Recommendation did not, however, extend this reasoning to the AMI Clause, which is the heart of the issue, and is addressed below.

2. *Whether the AMI Clause Runs With the Original Four Prospects and Whether the Recommendation is at Odds With Wyoming Case Law*

These two arguments are inextricably intertwined and, for the sake of judicial economy, will be discussed together.

■ A review of the background is required before discussing this issue. In 1967, Mountain West and Cliffs entered into an "Option and Agreement" with respect to uranium properties in the Powder River Basin. As noted above, the Option and Agreement granted Cliffs the option to acquire various mining rights and surface rights in exchange for payments to Mountain West, including percentage royalty payments on uranium production. The Option and Agreement contained an AMI clause. This clause obligated Cliffs to pay production royalty on uranium from any properties acquired by Cliffs within the defined area of mutual interest, i.e., the Powder River Basin. In 1969, Cliffs exercised its option and obtained an interest in the Original Four properties. These interests were eventually sold to Power and Pathfinder.

The issue presented is whether the AMI clause contained within the 1967 Option and Agreement binds Cliffs' successors. Mountain West contends that it does. It is important to note that this issue is different than the issue discussed above, in which the Court recognized that Cliffs and its successors are responsible for royalty payments on the Original Four properties if they produce uranium. Here, Mountain West asserts that once Power and Pathfinder acquired interests in property once owned by Cliffs, Power and Pathfinder were also subject to the AMI Clause. Mountain West asserts that by purchasing property in the Powder River Basin from Cliffs, Power and Pathfinder became subject to the AMI Clause, which requires them to pay royalties on any property they subsequently purchase. In other words, according to Mountain West, when Power and Pathfinder acquired rights in the Original Four properties, they not only agreed to make royalty payments to Mountain West on the property presently acquired, they also agreed to subject themselves to a four percent (4%) royalty interest on any property thereafter acquired in the Powder River Basin by Power or Pathfinder.

Common sense dictates that this could not have been the intent of the parties involved. Knowing that any land in which an entity acquires a mineral interest will likely be subject to a royalty interest to the owner of the land, it is inconceivable that Power and Pathfinder would agree to give another four percent royalty interest to an entity that does not own the land or have any rights to the land. It astounds the Court that Mountain West asserts that it is owed royalty payments on land which it has never owned by companies with which it has never entered into a contract or agreement. Nonetheless, the Court will analyze the legal aspects of Mountain West's argument. This requires the Court to determine whether the AMI Clause is a personal covenant or a covenant that runs with the land.[2] If the AMI Clause runs

**2.** The Court notes that Judge Beaman previously concluded that the AMI Clause does not

with the land, Cliffs' successors are bound by the AMI Clause. If, however, the AMI Clause is a personal covenant between Mountain West and Cliffs, Cliffs' successors are not subject to this agreement.

■ The Recommendation accurately recites the requirements that must be met to find that the AMI Clause runs with the land:

> Four elements must be met in order to establish that a covenant runs with the land. The original covenant must be enforceable, the parties must intend that the covenant run with the land, the covenant must touch and concern the land, and there must be privity of estate between the parties. *Jackson Hole Racquet Club Resort v. Teton Pines Ltd. P'ship*, 839 P.2d 951, 956 (Wyo.1992). "Restrictions upon the use of land, being in derogaton [sic] of the common law, are not favored, are to be strictly construed, will not extend by implication, and in case of doubt the restriction will be construed in favor of the free use of the land." *Id.* All four elements must be met in order for the Court to find that a covenant runs with the land.

*See* Recommendation, p. 20. The Recommendation determined that element two (the parties intended that the covenant run with the land) and four (privity of estate between the parties) were absent, and thus, the AMI Clause was not a covenant that runs with the land. *Id.* at pp. 20–24.

Mountain West objects to these findings. Mountain West first argues that privity of estate exists between the parties. Mountain West relies on *North Finn v. Cook*, 825 F.Supp. 278, 282 (D.Wyo.1993) and

*Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903 (Tex.1982) as the basis for this argument. Mountain West next argues that the parties intended the AMI Clause to run with the land. Mountain West believes that these arguments are supported by two Wyoming cases, *Jackson Hole, supra*, and *Streets v. JM Land & Developing Co.*, 898 P.2d 377 (Wyo.1995).

An analysis of relevant case law regarding covenants that run with the land is useful at this point to provide a better understanding of this complicated issue and to aid in determining whether Mountain West's argument that the Recommendation is at odds with Wyoming case law has merit.

In 1931, the Wyoming Supreme Court discussed the issue of covenants that run with the land:

> Since the early dawn of history up to the present time it has been the general policy of semicivilized and civilized man that no one should be held chargeable with an obligation under a contract except by his consent and that, generally, express.... Hence, while inroads into that general policy have been made from time to time, and doubtless will continue to be made, nevertheless, it may still be said to be the general rule that one who claims the benefit of an exception thereto must be able to show that lawmakers and jurists have found by experience, or the situation at hand requires, that such exception should be made. Such exception to this general rule exists when a covenant runs with the land; that is to say, when the covenant inures to the benefit of, or must be fulfilled by, what-

run with the land. We wholeheartedly agree with this conclusion. However, we take this opportunity to address Mountain West's ob-

jections and more fully discuss the history of covenants in Wyoming and relevant case law.

ever party holds the land at the time when fulfillment is due.... It early became generally accepted that the benefit of a covenant, particularly that for title, runs with the land and inures to every subsequent holder thereof.... But the early rule is not so clear as to the burdens, and we can readily see that to say that a personal undertaking may be shifted on to a stranger willy-nilly by merely imagining it to be in some way affixed to the soil—a mental process difficult of conception—must have given the early jurists no little trouble.... [I]n addition to other objections, such covenants would tend to restrict free alienation and infringe the rule against perpetuities.

*Lingle Water Users' Ass'n v. Occidental Bldg. & Loan Ass'n,* 43 Wyo. 41, 297 P. 385, 387 (1931) (citations omitted). The Wyoming Supreme Court determined that "the intention of the original parties to a contract alone cannot create a covenant running with the land...." *Id.* at 389. These concerns ultimately led courts to require that four elements, discussed above, be met in order for the covenant to run with the land. *See Jackson Hole,* 839 P.2d at 956; *North Finn,* 825 F.Supp. at 282.

Mountain West urges this Court to find that the rationale behind the *Lingle* decision has "lost persuasive force." *See* Pl's Resp. to Defs'. Joint Mot. for Summ. J., p. 7. Mountain West bases this assertion on the *Jackson Hole* case.

In *Jackson Hole,* the district court granted summary judgment after determining that an exclusivity agreement did not create a covenant, condition or restriction that ran with the land. *Jackson Hole,* 839 P.2d at 957. Specifically, the district court found that the agreement did not touch and concern the land, and that privity did not exist between the covenanting parties. *Id.* The Wyoming Supreme Court reversed the district court's decision to grant summary judgment. *Id.* at 959. Plaintiff believes that this reversal of summary judgment requires this Court to refuse to grant summary judgment in the present case. Plaintiff states that the district court's conclusions in *Jackson Hole* that the agreement did not run with the land were "overturned", and erroneously concludes that the Wyoming Supreme Court must have determined that this agreement did in fact touch and concern the land, that privity existed between the parties, and that the agreement was a covenant that runs with the land. This Court cannot draw such a conclusion from the mere reversal and remand of summary judgment.

The Wyoming Supreme Court did not in any way indicate that by reversing summary judgment, it intended to overturn *Lingle.* Nor did it indicate that the district court should ultimately find that the covenant runs with the land. In fact, the Wyoming Supreme Court reversed simply because the factual disputes made summary judgment improper. Rather than direct the district court in how to determine the issues, the Wyoming Supreme Court stated:

We are not able to command or earnestly advise how this case should be resolved in the trial court. It best serves if we remand to the district court with the observation that, because of its complexity the parties have polarized into extreme positions, and presentation of the issues to a fact finder will likely be required. After more complete development of the facts, whether it is necessary to present the fundamental issue to

a fact finder undoubtedly will become less clouded.... Based on the record extant there are genuine issues of material fact which preclude summary judgment.

*Id.* at 958. It is enlightening to note, however, that the Wyoming Supreme Court approved of the portion of the district court's opinion that discussed the four elements that must be established to find that a covenant runs with the land, and further approved of the following statement:

Restrictions upon the use of land, being in derogation of the common law, are not favored, are to be strictly construed, will not extend by implication, and in case of doubt the restrictions will be construed in favor of the free use of the land. *Kincheloe v. Milatzo,* 678 P.2d 855 (Wyo.1984), citing *Kindler v. Anderson,* 433 P.2d 268 (Wyo.1967).

*Id.* at 956. Thus, the holding in *Jackson Hole* has no relevance to the case at hand other than to reaffirm that four elements must be met to establish that a covenant runs with the land and that such a finding is generally disfavored.

Mountain West further asserts that the holdings in *North Finn* and *Westland Oil* contradict the Recommendation and require us to find that privity of estate has been established in the present case. In *Lingle, supra,* the Wyoming Supreme Court discussed in depth the requirement of privity of estate. The *Lingle* court stated:

Hence the covenant which is to burden the land, in order that something may exist to which the former may be tied, and that it may not be suspended in the air, as it were, must accompany a grant of the land itself, or of an interest there-

in which exists therein at the time of the grant.... In order to make a covenant run with the land of the covenantor and bind his heirs and assigns, the covenantee must, as a general rule have such an interest in the land as to amount to a privity of estate between the parties to the covenant.... To constitute such relation, they must both have an interest in the land sought to be charged by the covenant. It is said their position must be such as would formerly have given rise to the relation of tenure. A covenant real is, and can only be, an incident to land. It cannot pass independent of it. It adheres to the land, is maintained by it, is in fact a legal parasite, created out of and deriving life from the land to which it adheres. It follows, that the person in whose favor a covenant is made must have an interest in the land charged with it; for he can only get the covenant through, and as an incident to, the land to which it is attached.

*Lingle,* 297 P. at 391–92 (internal citations and quotations omitted). As noted above, this Court in no way finds that the Wyoming Supreme Court has indicated its intent to overturn *Lingle.* We analyze the holdings in *North Finn* and *Westland Oil* with this in mind.

In *North Finn,* D.L. Cook ("Cook") obtained a mineral rights lease in Campbell County, Wyoming, which was then "farmed out" to Kelly Oil and Gas Company ("Kelly Oil"). *North Finn,* 825 F.Supp. at 279. The Farmout agreement provided that Cook "shall be reassigned by Farmee, a fully participating thirty percent (30%) backin working interest ..." *Id.* North Finn later succeeded Kelly Oil as the owner of that interest. *Id.* at 280. Thus, North Finn took that interest subject to the above covenant.

In *Westland Oil,* the Texas Supreme Court determined that an AMI Clause was a covenant that ran with the land. *Westland Oil,* 637 S.W.2d at 910. The AMI Clause was in the agreement between the original parties to the covenant and related to sections 19, 23 and 24. *Id.* The successors to interests in these sections were also bound by the AMI Clause. *Id.*

Based on the facts in these cases, Plaintiff argues "[p]rivity, as in *North Finn,* arose through defendants' successor relationship to the covenantor, just as it does in this case. Accordingly, beyond plain language of the documents binding Cliffs' successors contractually, the AMI clause also binds Cliffs and its successor because there is privity of estate." *See* Pl's. Objection to Report and Recommendation of Magistrate Judge, p. 9. However, it is clear the above cases are distinguishable from the present case. In both *North Finn* and *Westland Oil,* the original parties to the agreement had an interest in the land when the covenant was made, and the subsequent party obtained an interest in *that land* subject to the covenant from one of the original parties. In fact, *Westland Oil* specifically noted that rights in the same property must be involved in order for the AMI Clause to run with the land.

> In order for the covenant to run with the land there must be privity of estate between the parties to the agreement. This means there must be a mutual or successive relationship to the same rights of property. *Blasser v. Cass,* 158 Tex. 560, 314 S.W.2d 807 (1958). Privity of estate exists in this case by virtue of the assignment of sections 19, 23 and 24 to Gulf and Superior.

*Westland Oil,* 637 S.W.2d at 910–11.

In the present case, however, neither Mountain West nor Cliffs ever had an interest in the Highland properties. Nor did Power or Pathfinder take the Original Four properties subject to the AMI Clause. This is evidenced by the fact that when Cliffs' immediate successors to the Original Four properties, CEGB and Uranerz, acquired these properties, neither CEGB nor Uranerz assumed the AMI Clause. Rather, these companies rejected this clause. In 1986, Cliffs conveyed two of the Original Four properties, North Bing and Four Mile, to CEGB. The deed stated:

> [Cliffs] warrants to [CEGB] that by executing this Deed of Mining Claims, [CEGB] does not share or take any responsibility of [Cliffs] to pay mineral production royalty to [Mountain West] from property **other than the Subject Property**.

Ex. D–19, letter dated 6/12/86 with Deeds of Mining Claims and Assignments of Mining Leases at MWM 001132, 001135 (emphasis added). In 1996, CEGB sold the North Bing and Four Mile properties to Power via a Quitclaim Deed. This Deed does not mention the AMI Clause. Ex. D–24, Quitclaim Deed. Further, at the time that CEGB conveyed this land to Power, Power was a wholly-owned subsidiary of CEGB. Ex. D–17, W. Salisbury Aff. at ¶¶ 6–7. It follows that if CEGB explicitly refused to burden itself with the AMI Clause, its subsidiary would not become burdened by an AMI Clause which did not burden its immediate successor.

Similarly, in 1987, Cliffs conveyed its interest in the remaining Original Four properties, North Butte and Greasewood Creek, to Uranerz. This deed contained the same language as the Cliffs–CEGB deed. Ex. D–20, Deeds at PR 00612, 00751. In 1991, Uranerz sold its interests in North Butte and Greasewood Creek to

Pathfinder. The Deed specifically stated that Pathfinder assumed royalty payments on production only on the properties it was presently acquiring:

> Grantee does not share or take responsibility to pay any mineral production royalty to Mountain West Mines, Inc., or its successors or assigns, on production **from any property other than the property referred to hereinabove**.

Ex. D–23, letter 4/22/91 with Deed at MWM 001051. In 2001, Pathfinder sold this interest to Power; the Deed does not mention the AMI Clause. Ex. D–26, Special Warranty Deed.

█ Thus, it is apparent that privity of estate simply does not exist with respect to the AMI Clause. Cliffs' successors to the Original Four properties rejected the burdens imposed by the AMI Clause. The AMI Clause did not run with the land. Thus, Mountain West cannot claim it is owed royalty payments from companies who are not bound by the AMI Clause on land which neither Mountain West nor Cliffs have ever owned.

█ We further agree with the Recommendation that intent does not exist:

> Further, the Option and Agreement and the corresponding addenda demonstrate that it was not the parties' intention that the AMI clause run with the land and thereby, bind any of Cliffs' successors to also pay a 4% interest on any future land acquisitions within the Powder River Basin. The Option and Agreement does not state that the AMI clause runs with the land. The AMI clause does not mention Cliffs' successors. In fact, the AMI clause specifically states that "It is further understood and agreed that "Mountain West" will be entitled to and "Cliffs" agree [sic] to convey a two and

one-half percent (2–1/2%) royalty interest to "Mountain West" in any lands *it* may hereafter acquire in the "Powder River Basin..." (emphasis added). Reading the contract and applying the principles of plain language, the "it" references Cliffs. Therefore, the AMI clause suggests that it is binding between Mountain West and Cliffs."

*See* Recommendation, pp. 22–23.

For the foregoing reasons, this Court **FINDS** that the Recommendation is not at odds with Wyoming case law. Furthermore, Judge Beaman was correct in determining that the AMI Clause does not run with the land because both intent and privity are lacking. Therefore, the Court rejects Plaintiff's arguments on these two points.

3. *Whether the AMI Clause is Enforceable Under the Restatement*

This Court has already determined that, according to Wyoming case law, the AMI Clause is not a covenant that runs with the land. It is thus irrelevant whether the theories contained within the Restatement would dictate that this case be decided differently. Until Wyoming adopts portions of the relevant Restatement, the Restatement has no precedential value. Relevant Wyoming Supreme Court decisions that have adopted the Restatement's positions have been exhaustively discussed in the Recommendation and within this Order. The Court need not spend additional time on this subject.

### Counterclaims

1. *Defendant Cliffs*

Defendant Cliffs filed a counterclaim seeking a declaration pursuant to 28

U.S.C. §§ 2201 and 2202 and Wyo. Stat. § 1-37-110 that neither Cliffs nor any other Defendants or other transferees of any other property from Cliffs other than the Original Four properties (Four Mile, North Bing, North Butte, and Greasewood Creek) owe any royalty to Mountain West. Also, Cliffs seeks declaratory judgment that no royalties for the Original Four properties are owed at this time due to lack of production and due to Mountain West's receipt and retention of advance royalty payments. Cliffs also seeks costs and fees.

## 2. Defendant Pathfinder

Defendant Pathfinder seeks the entry of judgment that: (1) the Option and Agreement obligates Cliffs to pay royalties on properties it acquires within the "Area of Mutual Interest" but does not apply to properties owned by any third party doing business with Cliffs; (2) any properties acquired by Pathfinder within the "Area of Interest" in which Cliffs has or had no interest, are not affected by or subject to any of the terms in the Option and Agreement; (3) Pathfinder did not take responsibility to pay any mineral production royalty to Mountain West on production from any property other than the Greasewood Creek and North Butte properties and that no production occurred on these two properties and consequently, Pathfinder does not owe production royalties to Mountain West; and (4) Cliffs has paid advance royalties in the amount of $1,319,286.60 to Mountain West on the Original Four properties, to which Pathfinder now holds the right of recoupment; as such, any future royalties that are due or may become due in the future to Mountain West must be paid to Pathfinder until the total amount of those previously paid advanced minimum royalties have been satisfied. Pathfinder also seeks costs and fees.

## 3. Defendant Power Resources.

Power seeks the entry of judgment that no properties acquired, or which may be acquired in the future by Power, are burdened by royalty obligations to Mountain West except for those properties which were acquired by Cliffs from Mountain West prior to Power's acquisition of the lands and as to which Cliffs granted or acknowledged a royalty obligation to Mountain West. Power also seeks attorney's fees and costs.

## 4. Findings

█ As discussed above, there is no dispute that uranium production has not occurred on the Original Four properties; as such, it is hereby **ADJUDGED and DECREED** that royalties are not presently owed on the Original Four properties. Should production occur, a four percent royalty shall be paid to Mountain West, offset by the advance royalty payments in the amount of $1,319,286.60 already paid to Mountain West by Cliffs.

In accordance with the above ruling, it is further **ADJUDGED and DECREED** that neither Cliffs, Pathfinder, Power, nor any other transferees of any other property from Cliffs other than the Four Mile, North Bing, North Butte, and Greasewood Creek properties owe any royalty to Mountain West.

It is further **ADJUDGED and DECREED** that Mountain West shall pay Cliffs', Pathfinder's and Power's costs and fees in the above-referenced matter.

### Conclusion

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Recommendation is **ADOPTED** in its entirety.

Defendants' Joint Motion for Summary Judgment is **GRANTED**. Plaintiff's Motion for Partial Summary Judgment is **DENIED**. The claims against Defendants are hereby **DISMISSED** with prejudice.

**IT IS FURTHER HEREBY ADJUDGED and DECREED** that royalties are not presently owed on the Original Four properties.

**IT IS FURTHER HEREBY ADJUDGED and DECREED** that neither Cliffs, Pathfinder, Power, nor any other transferees of any other property from Cliffs other than the Four Mile, North Bing, North Butte, and Greasewood Creek properties owe any royalty to Mountain West.

**IT IS FURTHER HEREBY ADJUDGED and DECREED** that Mountain West shall pay Cliffs', Pathfinder's and Power's costs and fees, including reasonable expert witness and attorneys' fees, in the above-referenced matter.